IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEBRASKA

| | |
|---|---|
| SHARON K. HENGGELER, on behalf of herself and all others similarly situated,, <br><br> Plaintiff, <br><br> vs. <br><br> BRUMBAUGH & QUANDAHL, P.C., LLO; KIRK E. BRUMBAUGH; MARK QUANDAHL; LIVINGSTON FINANCIAL, LLC; and MIDLAND FUNDING, LLC, d/b/a ENCORE FUNDING, LLC, A Fictitious Name,, <br><br> Defendant. | CASE NO. 8:11-CV-00334 |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT MIDLAND FUNDING, LLC'S MOTION TO STAY PROCEEDINGS AND TO COMPEL ARBITRATION, OR ALTERNATIVELY, MOTION TO DISMISS**

**Prepared and submitted by:**

Douglas E. Quinn #15742
J. Scott Paul #16635
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
(402) 341-3070
(402) 341-0216 fax
dquinn@mcgrathnorth.com
spaul@mcgrathnorth.com
Attorneys for Midland Funding, LLC

INTRODUCTION

This case arises out of and relates to a Cardmember Agreement ("Agreement") between the Plaintiff, Sharon K. Henggeler ("Plaintiff") and Midland Funding LLC ("Midland"), as assignee of Chase Bank USA, N.A. ("Chase"). That Agreement contains an arbitration clause that is valid and enforceable under the Federal Arbitration Act ("FAA"),[1] and this dispute falls squarely within it. Accordingly, Midland requests that this Court enter an Order that this proceeding be stayed under 9 U.S.C. § 3 and that Plaintiff be ordered to arbitrate those claims under 9 U.S.C. § 4. Alternatively, Midland asserts that the Court has the authority to dismiss Plaintiff's claims in favor of arbitration.

STATEMENT OF FACTS

On or about February 11, 2005, Plaintiff entered into the Agreement with Chase. The Agreement contained a provision whereby the Plaintiff agreed to arbitrate any disputes arising out of the Agreement. (Index Ex. 1, Declaration of Christina Paperman ¶2; MID 0001-0010).

Pursuant to the terms of a Credit Card Account Purchase Agreement dated January 5, 2010 between Midland and Chase, Chase assigned to Midland through a January 4, 2011 Bill of Sale all of Chase's rights to collect certain delinquent accounts including that of the Plaintiff. (Index Ex. 2, Affidavit of Kyle Hannan ¶3). Accordingly, Midland stands in the shoes of Chase in terms of Plaintiff's account.

Midland originally sought to register as a foreign limited liability company with the Nebraska Secretary of State in its actual name, "Midland Funding, LLC." However, Midland was informed that its true was unavailable for registration. Thus, in order to register to do business in Nebraska, Midland was required to designate an alternative name for registration.

Consequently, on November 12, 2009, Midland Portfolio Services, Inc., the sole member and manager Midland Funding LLC, adopted the following resolution:

---

[1] *See* 9 U.S.C. §1 *et seq.*

1

> RESOLVED, that, inasmuch as the Company desires to transact business in the State of Nebraska, and inasmuch as the Manager has been advised that the name of the Company is not available for use in the State of Nebraska, the Company hereby adopts the fictitious name "Encore Funding LLC" for use in transacting business in the State of Nebraska pursuant to Section 21-2640 of the Nebraska Limited Liability Company Act; and
>
> FURTHER RESOLVED, that the officers of the Company be and hereby are authorized and directed to cause any and all required documents to be prepared, executed, and filed so that the Company may obtain a Certificate of Authority to transact business in the State of Nebraska, and to cause the Company to use the said fictitious name in the transaction of business in the State of Nebraska.

(Index Ex. 3, Affidavit of Carrie Darling ¶4).

On December 4, 2009, Midland filed its Application for Certificate of Authority Limited Liability Company to do business under the fictitious name of "Encore Funding LLC." (Index Ex. 4, Affidavit of J. Scott Paul). On the same date, a Certificate of Authority for Encore Funding LLC was issued by John A. Gale, the Nebraska Secretary of State. Id.

## ARGUMENT
## PLAINTIFF'S CLAIMS ARE SUBJECT TO A VALID ARBITRATION AGREEMENT

### A.   The FAA Applies

The FAA applies broadly to arbitration provisions in agreements evidencing a transaction involving interstate commerce. Specifically, the FAA states that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2006). Because Plaintiff alleges that Midland is an LLC and is a debt collector under the terms of the FDCPA (FAC, ¶13) and that Midland purchases consumer debt from creditors (¶14), there is no question that the complained-of conduct involves commerce and is

2

therefore subject to the FAA. *See Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 123 S. Ct. 2037, 2040 (2003) (noting that "involving commerce" a term signaling the "broadest permissible exercise of Congress' Commerce Clause power").

> The FAA also contains the following provision relating to motions to stay:
>
>> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been held in accordance with the terms of such agreement, providing the applicant for the stay is not in default of the proceedings with such arbitration.

9 U.S.C. § 3 (2006).

> Section 4 of the FAA governs motions to compel and provides that:
>
>> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (2006).  This provision "provides a federal remedy for a party 'aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration, and directs the federal court to order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored." *Prima Paint Corp., v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801, 1804 (1967).  As noted by the Eighth Circuit, the FAA leaves no discretion to the district courts; instead, it mandates that district courts *shall* order parties to arbitrate issues to which the arbitration agreement applies. *Pro Tech Industries, Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

Finally, the FAA preempts any inconsistent state statute which would attempt to preclude arbitration of these claims or to impose special obstacles targeting arbitration clauses or agreements. *Faber v. Menard, Inc.*, 367 F.3d 1048 (8th Cir. 2004).

B. There Is a Valid Agreement to Arbitrate Plaintiff's Claims Against Midland.

A two-step analysis is applied to determine whether a party may be compelled to arbitrate. *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695-96 (8th Cir. 1994) (citing *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994). First, the court asks if the parties have agreed to arbitrate the dispute. Second, the court must determine whether the specific dispute falls within the scope of that agreement *Id.*

a. The Agreement Contains a Valid Agreement to Arbitrate.

The first step of the two-step inquiry–ascertaining whether the parties have agreed to arbitrate the dispute–itself contains two questions: (1) is there a valid agreement to arbitrate the claims, and (2) does the dispute in question fall within the scope of that arbitration agreement. *Id.* These questions are decided according to state law. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 2542, 258 (5th Cir. 1996)). The answer to both these questions here compels the result that Plaintiff's claims be submitted to arbitration.

On or about February 11, 2005, Plaintiff executed the Agreement. (Index Ex. 1, Declaration of Christina Paperman at ¶2). That Agreement contains an express, written agreement to arbitrate disputes arising thereunder:

> Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your account, will, at the election of either you or us, be resolved by binding arbitration.

Agreement, page 13.

Indeed, Plaintiff was so advised in all capital letters:

> IT IS IMPORTANT THAT YOU READ THIS ARBITRATION AGREEMENT CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THAT IS COVERED BY THIS ARBITRATION AGREEMENT THROUGH ARBITRATION, EVEN IF YOU WOULD PREFER TO LITIGATE THE CLAIM IN A COURT. YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION, MAY NOT BE AVAILABLE IN ARBITRATION OR MAY BE MORE LIMITED.[2]

Although the Agreement was initially entered into by Plaintiff and Chase, Plaintiff expressly agreed that Chase could assign its interest in Plaintiff's account to a third party, who would then step into Chase's shoes with regard to Plaintiff's account: "We may sell or transfer your Account and any amounts owed on your Account to another person at any time. If we do, this Agreement will still be in effect and any successor will have our rights in this Agreement to the extent assigned." (Agreement, page 5).

The Agreement's arbitration clause also makes clear that if Chase sells or assigns Plaintiff's account, the benefit of the arbitration clause flows to Chase's assignee:

> For the purposes of this Arbitration Agreement, "we" and "us" means Chase Manhattan Bank USA, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, *successors, assigns, any purchaser of your Account*, and all of their officers, directors, employees, agents, and assigns or any and all of them.

*See* Agreement [page 14.] (emphasis added).

---

[2] The Arbitration Agreement also contained a "small claims" provision allowing the parties to litigate claims up to $25,000 excluding interest, costs and fees if the party seeking litigation provides "reasonable assurance" that the nature of the claim would continue to meet the conditions of the small claims exception.

5

Here, Chase "assign[ed] . . . all rights, title and interest" in Plaintiff's account to Midland. [Hannan/Bill of Sale]. Thus, the Agreement–and its arbitration clause–now constitute a valid, binding agreement to arbitrate disputes between Plaintiff and Midland.[3]

### b.  Plaintiff's Claims Fall Within the Scope of the Agreement to Arbitrate.

Under the FAA, "the scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *Medcam, Inc. v. MCNC et al.,* 414 F.3d 972, 975 (8th Cir. 2005) citing *Lyster v. Ryan's Family Steak Houses, Inc.,* 239 F.3d 943, 945 (8th Cir. 2001).

This dispute arises out of Plaintiff's failure to pay amounts due on her account with Chase. That is precisely the type of claim that falls with the scope of the Agreement's broad agreement to arbitrate::

> 2. Claims Covered. Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your account, will, at the election of either you or us, be resolved by binding arbitration. <u>This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief.</u> Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. (Emphasis added).

(Index Ex. 1, Declaration of Christina Paperman, MID 0001-0010).

---

[3] The fact that Midland was compelled to do business in Nebraska as Encore Funding LLC does not change the fact that Plaintiff and Chase agreed to arbitrate disputes such as those raised in the Complaint and that Midland (as Chase's assignee) is now entitled to enforce that Arbitration Agreement.

Because Plaintiff's claims relate to the non-payment of sums incurred in connection with her Chase account–and, hence, "aris[e] from or relat[e] in any way to the Cardmember Agreement"–Plaintiff's claims against Midland fall with the arbitration clause's broad scope.

C.  This Court and Eighth Circuit Have Enforced Similar Arbitration Provisions.

"There is an emphatic federal policy in favor of arbitral dispute resolution." *KPMG, LLP v. Robert Cocchi*, 565 U.S. ___ (November 7, 2011) (*citing Mitsubishi Motors Corp v. Soler Chrysler-Plymouth, Inc.*, 473.U.S.614, 631 (1985)). Not surprisingly, then, this Court has enforced arbitration clauses of the same construction as in the present case. *See, e.g., Schreiner v. Credit Advisors, Inc.*, 2007 W.L. 2904098 (D. Neb).

In *Schreiner*, the Defendant, Credit Advisors, sought to compel arbitration of the Plaintiff's claims arising under the FDCPA, the Nebraska Consumer Protection Act and other federal and state statutes. The Plaintiff had agreed in writing to arbitrate before the American Arbitration Association any disputes arising out of that agreement. In sustaining the Defendant's motion to compel arbitration, this Court found that the agreement between the parties was governed by the FAA *Id*. at *4. The Court found that, despite the fact that the agreement was a contract of adhesion, the parties had agreed to arbitrate disputes under their agreement and it was not unconscionable. *Id*. at *5. Finally, this Court noted that the agreement, by its terms, applied to "any controversy or claim arising out of or relating to this contract," and, therefore, that the arbitration clause applied to the parties' dispute. *Id*. at *8.

The Eighth Circuit reached a similar result in *CD Partners, LLC v. Grizzle*, 424 F.3d 795 (8th Cir. 2005), where a franchisee sued principals of the franchisor under theories of negligence, negligent misrepresentation, and fraudulent misrepresentation. The franchise agreements between the parties contained an arbitration clause covering "any claim, controversy or dispute arising out of or relating to Franchisee's operation of the Franchised business under the Agreement." *Id*. at 800. The Eighth Circuit acknowledged the "strong national policy in favor of arbitration" and held that the tort suits brought by plaintiffs were

7

subject to the arbitration clause because they arose out of the same "operative facts" at issue in the agreement between the parties. *Id.* at 800-01.

The same reasoning applies in the present case. Plaintiff asserts FDCPA claims and claims for violation of the Nebraska Consumer Protection Act. The gist of Plaintiff's allegations against Midland is that after execution of the Agreement, Midland engaged in unfair or deceptive practices by misrepresenting the name of the debt collector and misrepresenting whether an attorney was involved in the collection of the debt. Thus, it is evident that all Plaintiff's claims are subject to the arbitration clause in the Agreement because they relate to and arise out of the same operative facts that are the subject matter of the Agreement–namely, Plaintiff's debt.

Despite the existence of the valid arbitration clause in the Agreement, Plaintiff initiated this litigation in federal court. As demonstrated herein, all Plaintiff's claims are subject to arbitration because they relate to and arise out of the same operative facts that are the subject matter of the Agreement. Therefore, Midland has filed its motion pursuant to the FAA asking the Court to stay the proceedings and to refer this matter to arbitration. Alternatively, Midland submits that the Court has the authority to dismiss Plaintiff's claims in favor of arbitration. *See e.g. Pro Tech Industries, Inc. v. URS Corp.*, 377 F.3d 868 (8th Cir. 2004) (dismissing the proceedings and holding that where parties agreed to arbitrate, and the dispute falls within the arbitration agreement, the parties should be compelled to arbitrate); *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536 (8th Cir. 2002) (affirming judgment of the district court compelling arbitration and dismissing plaintiff's claims without prejudice).

D.    **Other Courts Have Routinely Referred Other Such Midland Cases to Arbitration.**

Midland has successfully compelled arbitration in other FDCPA cases in which Midland is the assignee of the plaintiff's original creditor. For example, in *Thompson v. Midland Funding, LLC*, U.S. Dist. LEXIS 85746 (August 3, 2011) (E.D. Miss. 2011), the plaintiff's complaint alleged that Midland violated the FDCPA in its efforts to collect on a defaulted debt. (Index Ex. 5). The plaintiff also sought to have her case proceed as a class action. In that case, Midland filed a

8

motion to compel arbitration and dismiss the action. The district court granted the motion, finding that Midland was the successor in interest to Beneficial Mississippi, the creditor who sold a pool of charged off accounts–including the plaintiff's–to Midland. Significantly, the court rejected the plaintiff's assertions that (a) Midland lacked standing to enforce the arbitration clause; (b) that Midland had waived its attempt to collect the plaintiff's debt by the filing of a state court collection action; and (c) that the arbitration language in the cardholder agreement was unconscionable. The court then granted Midland's motion to dismiss with prejudice finding that the plaintiff must submit her claims to arbitration.

In *Bellows v. Midland Credit Management, Inc.*, No. 09CV1951-LAD (S.D. Cal. 2011), the district court granted Midland's motion to compel arbitration of a claim brought by a credit card holder who was alleging violations of the FDCPA. (Index Ex. 6). The plaintiff in that case resisted arbitration on two grounds: (1) that there was no agreement to arbitrate, and (2) that the agreement was unenforceable under California law. In rejecting the first argument, the court concluded that Midland's submission of a declaration from the original credit card issuer established a sufficient foundation for the existence of the parties' agreement to arbitrate. The court then rejected the plaintiff's unconscionability claim, which was premised principally on the inclusion of a class action waiver, based on the recent United States Supreme Court decision in *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 2011 WL 1561956 (April 27, 2011), which held that arbitration agreements are not substantively unconscionably merely because they include class action waivers.

Similarly, in *Olnick v. Fulton, Freedman & Gullace, LLP et al.*, CV #W-11-CA-071 (W.D. Tex. 2001), the district court granted Midland's motion to refer the Plaintiff's FDCPA claim to arbitration. (Index Ex. 7). The *Olnick* court concluded that an agreement to arbitrate existed between the plaintiff and Midland because the plaintiff entered into a credit card agreement that contained an arbitration clause, which was ultimately sold and assigned to Midland. In granting Midland's motion to compel arbitration, the court rejected plaintiff's claims that the arbitration

provision was unconscionable and unenforceable because one of the arbitral forums specified in the agreement no longer existed. Accordingly, the district court compelled the parties to arbitrate their dispute and stayed the proceedings in the meantime.

  E.  **If the Court Has Any Doubts Concerning the Arbitrability of Plaintiff's Claims, It Should Err on the Side of Compelling Arbitration And Allow the Arbitrator to Resolve Them.**

Although the question of whether the parties have agreed to submit any particular dispute to arbitration, i.e., the question of arbitrability, is ordinarily an issue for the judicial determination, that is not the case when the parties' arbitration agreement clearly and unmistakably provides otherwise. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2001) ("The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability,*' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." quoting *AT & T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)); *see also Sadler v. Green Tree Servicing, LLC*, 466 F.3d 623 (8th Cir. 2006). The Agreement in the present case does so, clearly providing that the "claims subject to this Arbitration Agreement include claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement." (Index Ex. 1, Declaration of Christina Paperman at ¶2). Accordingly, the arbitrator is empowered to decide any questions concerning scope or enforceability of the Agreement.

  F.  **The Fact That the Plaintiff Seeks to Certify a Class Action Does Not Preclude This Matter Being Sent to Arbitration.**

While Plaintiff seeks to pursue her claims on a class-wide basis, she expressly agreed in the arbitration agreement not to do so. (Index Ex. 1, Declaration of Christina Paperman at ¶2). The United States Supreme Court recently ruled that such agreements are binding. *See AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1753 (2011). *See also Schreiner v. Credit Advisors, Inc.*, 2007 W.L. 2904098 (D. Neb) (citing *Jenkins v First AM. Cash Advance of Georgia, LLC*, 400 F.3d 868, 877 (11th Cir. 2005), cert. denied, 546 U.S. 1214 (2006)). Thus,

plaintiff's class action allegations are not an impediment to the Court compelling arbitration of Plaintiff's claims.

In any event, whether plaintiff's claims may proceed on a class action basis in arbitration is a question reserved for the arbitrator, not the Court.  *See Greentree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).

## CONCLUSION

For the foregoing reasons, Defendant Midland respectfully requests that the Court stay the proceedings and Order that this matter be submitted to binding arbitration, or alternatively, dismissed in favor of arbitration.

MIDLAND FUNDING, LLC, Defendant


By: /s/  J. Scott Paul
　　Douglas E. Quinn #15742
　　J. Scott Paul #16635
　　McGrath North Mullin & Kratz, PC LLO
　　First National Tower, Suite 3700
　　1601 Dodge Street
　　Omaha, Nebraska 68102
　　(402) 341-3070
　　(402) 341-0216 fax
　　dquinn@mcgrathnorth.com
　　spaul@mcgrathnorth.com

8:11-cv-00334-JFB-FG3   Doc # 47   Filed: 01/23/12   Page 13 of 13 - Page ID # 428

CERTIFICATE OF SERVICE

      I hereby certify that on January 23, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notice to the following:

Pamela A. Car
William L. Reinbrecht
Car & Reinbrecht, P.C., LLO
8720 Frederick Street, Suite 105
Omaha, NE 68124
pacwlr@earthlink.net

O. Randolph Bragg
Horwitz, Horwitz & Associates
25 East Washington St., Ste. 900
Chicago, IL 60602
rand@horwitzlaw.com

Cory J. Rooney
Brumbaugh & Quandahl, P.C.
4885 S. 118th St., Suite 100
Omaha, NE 68137
crooney@bqlaw.com

Joseph E. Jones
Luke J. Klinker
Elizabeth A. Culhane
Fraser Stryker PC LLO
500 Energy Plaza
409 S. 17th Street
Omaha, NE 68102
jjones@fraserstryker.com
lklinker@fraserstryker.com
eculhane@fraserstryker.com

      /s/ J. Scott Paul