**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

|  |  |  |
|---|---|---|
| SHARON K. HENGGELER and DAVID RANDALL, On behalf of Themselves and all others similarly Situated, | ) ) ) ) ) | **Case No.: 8:11-CV-334** |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| BRUMBAUGH & QUANDAHL, P.C., LLO, KIRK BRUMBAUGH, MARK QUANDAHL, LIVINGSTON FINANCIAL, MIDLAND FUNDING, LLC, d/b/a ENCORE FUNDING, LLC, A Fictitious Name, and LVNV FUNDING, LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |

<u>**PLAINTIFF SHARON HENGGELER'S BRIEF IN OPPOSITION TO
MIDLAND'S MOTION TO STAY AND COMPEL ARBITRATION
OR ALTERNATIVELY, TO DISMISS**</u>

**I.  Introduction**

Plaintiffs filed their First Amended Class Action Complaint (Filing No.12) with a

jury demand, on October 16, 2011, regarding Defendants' alleged violations of the Fair

Debt Collection Practices Act ("FDCPA") and Nebraska Consumer Protection Act

("NCPA").  No scheduling order has been entered and only limited discovery on the

existence of an agreement to arbitration has been allowed. (Filing No. 53)  Midland

Funding, LLC ("Midland") filed its Answer to Plaintiffs' First Amended Complaint on

November 30, 2011. (Filing No. 34) The other defendants filed a motion to dismiss on

October 31, 2011. (Filing No. 26)  Plaintiffs fully briefed their opposition including

1

extensive discussion of Midland's use of the false and fictitious name "Encore Funding, LLC". (Filing No. 35 P.36-41)  In other words, that motion has been submitted to the Court and is awaiting a ruling.  Plaintiffs have already spent considerable time dealing with the issue of Midland's use of the false name.  Midland's Motion against Plaintiff Henggeler to Stay and to Compel Arbitration, or alternatively, Motion to Dismiss in Favor of Arbitration was filed January 23, 2012. (Filing Nos. 45, 46, & 47)  The Motion to Arbitrate is only applicable to Midland and does not involve the other Defendants. Plaintiff Sharon Henggeler ("Henggeler ") was granted until May 7, 2012, to file her Opposition (Filing No. 53).  Plaintiff maintains that the parties did not enter into a binding arbitration agreement.  If an arbitration agreement exists, it is unconscionable as to Henggeler and should not be enforced.  It is in opposition to the Motion to Stay and to Compel Arbitration, or alternatively, Motion to Dismiss in Favor of Arbitration (Filing No. 45) that Plaintiff Henggeler now responds.

## II. Standard for the Court.

Before parties may be compelled to arbitrate under the FAA, a court must first determine whether a valid arbitration agreement exists, and second whether the dispute falls within the terms of that agreement. *Hollins v. Debt Relief of Am*., 479 F.Supp.2d 1099, 1105 (D.Neb. 2007) citing *EEOC v. Woodmen of the World Life Ins. Soc'y*, 479 F.3d 561, 565 (8th Cir. 2007); *Houlihan v. Offerman & Co*., 31 F.3d 692, 694-95 (8th Cir. 1994).  The court is limited deciding which forum will decide the dispute, and must not address matters beyond whether the arbitration agreement is invalid or that it does not apply to the dispute. *Hollins*, 479 F.Supp.2d at 1105 (citations omitted).

The decision whether to grant or deny a request for a stay to compel arbitration is a matter lying within the sound discretion of the trial court. *Webb v. R. Rowland & Co., Inc.*, 800 F.2d 803, 808 (8th Cir. 1986). The court not the arbitrator must decide whether an arbitration provision is enforceable. *Knepp v. Credit Acceptance Corp.*, 229 B.R. 821 833, (1999) citing 9 U.S.C.A. §1 *et seq.; Prima Paint Corp. v. Hood & Conklin Mfg.* Co., 388 U.S. 395, 404 (1967). The issue of whether the parties have a valid arbitration agreement at all is a gateway question that requires judicial resolution. *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 2006 WL 2273448 at *4 (N.J. 2006); citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). A party seeking to compel arbitration bears the burden to demonstrate that there is "clear and unmistakable evidence" that there was an agreement to arbitrate between the parties. *Knepp*, 229 B.R. at 835.

The rule in the Eighth Circuit is that in the context of a motion to compel arbitration under the FAA, the district court is limited to considering the parties' claims that the arbitration clause is invalid or that it does not apply to the dispute with respect to which arbitration is sought. *Bob Schultz Motors v. Kawasaki Motors Corp.*, 334 F.3d 721, 726 (8th Cir. 2003), citing *Prima Paint*, 388 U.S. at 403-404. As set forth more fully herein, Henggeler prevails under both prongs of the test.

### III. Reasons why Arbitration cannot be compelled in this case.

Plaintiff's objections are: First, that under Nebraska contract law, no valid agreement to arbitrate was ever formed. Henggeler never signed any such document, (Ex.1¶10,18) she never received notice that an arbitration clause was part of the alleged cardholder agreement, (Ex. 1¶10) Defendants cannot point to any evidence in the record

3

bearing her signature.  Further, the only "evidence" of an arbitration clause is provided by one Christina Paperman, (Filing No. 46, Ex.1) a third party non-employee of Chase with no actual knowledge of either Henggeler or her account, (Ex.3, Response RFA5) and who can only provide an **example** of what she believes were the documents sent to cardholders more than five (5) years ago.  Second, by filing a county court collection action against Henggeler, and many additional class members, Midland has waived any claim that this dispute can now be compelled into arbitration. Finally, that the Plaintiff's claims fall outside the scope of the defendant's arbitration clause and are not arbitrable. The claims against Midland in the federal case revolve around the use of a false name "Encore Funding, LLC" in the collection of alleged consumer debts from Nebraska residents, a violation of both federal and state statute that is far outside any claim contemplated under even the most broadly written arbitration clause.  For these reasons, Plaintiff Henggeler requests that the court deny Midland's motion.

In addition, the facts are clear that the arbitration clause was not provided to Plaintiff Henggeler, (Ex.1¶10) who was unaware of the clause until this litigation. (Ex. 1¶10) Nevertheless, hiding behind this clause and asserting a fictional "fundamental right" to arbitration, Midland now seeks to exclude the plaintiff, and all other similarly situated Nebraska consumers from participating in this case.  However, the situation will be complicated beyond belief because as a victim of identity theft the other class representative, David Randall, will remain a viable class representative in this court and the case will move forward in both forums.  Arbitration only serves to shield Midland's on-going pattern of unfair and unlawful practices from discovery and class action litigation brought under consumer protection statutes.

Midland's attempted reliance on federal policy favoring arbitration is unavailing. The Federal Arbitration Act creates no substantive right to arbitrate, but rather favors the enforcement of actual arbitration agreements freely-negotiated between parties of equal bargaining strength. *Lucy v. Bay Area Credit Svc., LLC*, 792 F.Supp.2d 320, 323 (D.Conn. May 23, 2011) quoting *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989). The policy provides absolutely no support for the blind enforcement of a standardized arbitration clause contained in an adhesive form contract signed by a consumer unaware of its existence and meaning. *Paladino v. Avnet Computer Techs, Inc*., 134 F.3d 1054, 1062 (11th Cir. 1998); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). As the courts have repeatedly emphasized, arbitration is fundamentally a matter of contract – a party cannot be coerced into arbitration to which he did not agree and an arbitration clause cannot be enforced if it is unconscionable. *Gore v. Alltel Comm., LLC*, 2012 WL 169758 *3 (7th Cir. Jan. 19, 2012). See also *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, (2002). The facts here establish that the plaintiff never consented to arbitration and that the defendant's adhesive arbitration clause is both procedurally and substantively unconscionable.

## IV. Statement of Issues.

1.  Whether the FAA applies and there is an enforceable agreement to arbitrate?

2.  If so, whether Midland has waived any claim to enforce an arbitration clause after it has already brought a county court lawsuit in the effort to collect on the alleged account?

3.  Assuming for the sake of argument that the arbitration clause is valid, whether the claims raised in the plaintiff's Complaint are within the scope of the alleged arbitration clause?

## V. Statement of Facts.

Defendant Midland is a purchaser of consumer credit card accounts which had gone into default.  The account at issue is Chase Mastercard for which all of the billing statements and notices were sent to an address in Plattsmouth, Nebraska.  (Ex. 1, ¶ 4). Plaintiff Henggeler has not at any time lived or received mail in Plattsmouth. (Ex.1¶ 7). Defendant Midland sued Henggeler on the alleged account in Cass County Court on June 27, 2011 at Case No. CI 11-520.  Henggeler filed an Answer (Ex.1A ¶2 & 9) stating that, "she is not and has not been a resident of Cass County, Nebraska", she went on to assert the affirmative defense, "that this is not her account, she is not familiar with this account, and that she does not owe the alleged account."  The county court case was dismissed without prejudice on October 11, 2011. (Ex.1B)  The Mastercard at issue was used to Plaintiff Henggeler's daughter and Henggeler received no benefit from the use of the card. (Ex. 1¶4)  Henggeler did not sign the back of the card. (Ex. 1¶4) Plaintiff Henggeler did not provide any actual, implied or apparent authority for the use of the card. (Ex. 1¶9).

## VI. A Major Logistical Nightmare would result if the Court Allowed Arbitration of Only Some of the Claims by one of the Parties.

From a judicial economy standpoint, allowing arbitration of one claim against one party, when multiple and common claims are made against other parties, would be a judicial nightmare and duplicate efforts. Not all the claims pertain to Midland.  The claim

against Midland is also made against another Defendants.  Henggeler makes a claim

against both B & Q and Midland for the use of the "Encore Funding, LLC" name.

Midland filed an Answer as to that claim on November 30, 2011. (Filing No. 34) B & Q

filed a motion to dismiss on October 31, 2011, which is now pending. (Filing No. 26)  In

the opposition to that motion, Plaintiff extensively briefed the issue of the use of the

"Encore Funding" name, the same issue Midland now wants to arbitrate. (Filing No. 35

P.36-41)

Henggeler also has additional claims directed toward B & Q and Livingston

Financial.  Forcing Henggeler to arbitrate Midland's use of the false name but litigate that

very claim against nonparties to the arbitration clause is judicially inefficient and could

lead to inconsistent results.

Next, there are two Plaintiffs, Ms. Henggeler and Mr. Randall. Both have identical

claims against B & Q that overlap with regard to the issue of the language of B & Q's

collection letter. However, the rest of Mr. Randall's claims pertain to Defendant LVNV.

He does not make any claim against Midland Funding/Encore.  Mr. Randall did not have

a CHASE card and was in fact a victim of identity theft so the court cannot move his

claims into arbitration. Therefore, the only logical thing for the Court to do is to allow the

plaintiffs to pursue all their claims in this Court.

## **VII. FAA Applicably.**

### **A. Test for Determining Whether FAA applies:**

The test for determining whether the FAA applies is: (1) there must be a written

arbitration agreement, and (2) underlying transaction must involve interstate commerce. 9

U.S.C.A. § 2.  The Federal Arbitration Act (FAA) does not preclude an examination into

whether the arbitration agreement at issue is unconscionable under state law.  *Medcam,*

*Inc. v. MCNC*, 414 F.3d 972, 974-75 (8th Cir. 2005); *Muhammad v. County Bank of*

*Rehoboth Beach, Delaware*, 2006 WL 2273448 (N.J. 2006) <u>citing</u> 9 U.S.C.A §§ 1 *et seq*.

Generally applicable contract defenses, such as fraud, duress, or unconsicionability, may

be applied to invalidate arbitration agreements without contravening the Federal

Arbitration Act. *Id.; Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Plaintiff submits that neither of the above elements is present in this case. And even if the

FAA applies, the contract defenses prohibit the arbitration clause's enforcement.

### B. Preemption.

Even assuming for the sake of argument that the FAA does apply, the FAA does

not preempt Nebraska's counterpart. Midland cites *Faber v. Menard, Inc.*, 367 F.3d 1048

(8th Cir. 2004), for the proposition that the FAA preempts any inconsistent state statute

that attempts to preclude arbitration or impose special obstacles targeting arbitration

clauses or agreements. Defendant's brief, however, does not give any specific statute or

example of how or why Nebraska's Statute should be preempted nor does its brief cite

Nebraska's law.

In general, there is a presumption against complete preemption. *Hage v. Gen. Serv.*

*Bureau*, 2002 WL 1796575 *2 (D. Neb. 2002) <u>citing</u> *Cipollone v. Liggett Group, Inc.*,

505 U.S. 504, 518 (1992). Courts may infer preemption if there is an "actual conflict"

between federal and state law. "Conflict preemption" is found where,  "compliance with

both federal and state regulations is a physical impossibility." *Ting v. AT&T*, 319 F.3d

1126, 1137 (9th Cir. 2003). In determining preemption, the court considers the

relationship between the state and federal laws as they are interpreted and applied, not

simply as they are written. *Id.* at 1137.  Thus, the focus is both on the objective of the federal law and the method chosen by Congress to effectuate that objective, taking into account the law's text, application, history and interpretation.

Under any preemption analysis, the party arguing for preemption must provide clear evidence of Congress' intent to preempt state law because the historic police powers of the states are not to be superseded by a federal Act unless that was the clear and manifest purpose of Congress. *Ting v. AT&T*, 182 F.Supp.2d 902, 936 (N.D. Cal. 2002). This evidence is crucial for Midland to meet its heavy burden of overcoming the presumption that Congress does not cavalierly preempt state law. *Id.* at 936-937.

## VIII. This Arbitration Clause Should Not Be Enforced.

First, directing the court's attention to the physical attributes of the arbitration clause (Filing No.46, Ex.1, MID 0001-00016), one quickly notices that the document does not include a signature line for either party. Next, the physical appearance of the clause (Filing No. 46, Ex.1, MID 0001-00016) is extremely troubling. If Filing No.  46, Ex.1, MID 0001-00016 accurately depicts a true original, the print type is very small even with the assistance of reading glasses and the quality is poor. Moreover, it is clear from just looking at the document  (Filing No. 46, Ex.1, MID 0001-00016 ), including the arbitration clause, that it is a standard preprinted form. There is no room anywhere to change the terms. (Ex.1¶11) Henggeler did not receive, (Ex.1¶10) sign, (Ex.1¶10) or benefit from, (Ex.1¶4) and had no opportunity to change or negotiate the terms. (Ex.1¶) Henggeler is not a business person and did not have a lawyer. (Ex.1¶15)  The arbitration clause is artfully buried amidst the middle of a pile of small print. All of these factors

establish Plaintiff's position more fully set forth below, that the clause, if it is a contract at all, is an unconscionable contract of adhesion and should not be enforced.

   **A.  Enforcement of an Arbitration Clause is a Matter of State Contract Law.**

   State contract law governs the validity of an arbitration agreement. *Hollins v. Debt Relief of Am.,* 479 F.Supp.2d 1099, 1105 (D. Neb. 2007) <u>citing</u> *First Options v. Kaplan*, 514 U.S. 938 (1995).  To determine whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening §2" [of the FAA]. *Hollins*, 479 F.Supp.2d at 1105-06 <u>quoting</u> *Doctors Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). In Nebraska, Arbitration is purely a matter of state contract law. *Hollins*, 479 F.Supp.2d at 1106.

   It is universally recognized that the FAA directs this court to apply state contract law when addressing the validity of an arbitration clause. *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536, 537-38 (8th Cir. 2002). Other Circuits, such as the Fifth and Sixth Circuits have also reached the same conclusion, determining the enforceability of an arbitration agreement according to the applicable state law of contract formation. *Will-Drill Res., Inc. v. Sampson Res.Co.*, 352 F.3d 211, 215, 220 (5th Cir. 2003); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003), (<u>citing</u> *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). <u>See also</u> *Floss v. Ryan's Family Steak Houses,* 211 F.3d 306, 314 (6th Cir. 2003). The FAA incorporates a savings clause, which provides that arbitration clauses will not be enforced if there are grounds under state contract law for invalidating the clause. 9 U.S.C. § 2.  The U.S. Supreme Court has recognized that common law contract defenses, such as unconscionability, are available

10

to a party challenging an arbitration agreement.  *Casarotto*, 517 U.S. at 687 ("[G]enerally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening [the F.A.A.].").

The principle that state contract law applies to arbitration clauses is also incorporated into the federal substantive law of arbitration.  *Perry v. Thomas,* 482 U.S. 483, 492-93 (1987) ("An agreement to arbitrate is . . . enforceable, *as a matter of federal law*, 'save upon such grounds as exist at law or in equity for the revocation of *any* contract.' . . .  Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to cover issues concerning the validity, revocability, and enforceability of contracts generally.") (Emphasis in original, citations omitted).

**B. Under Nebraska's Contract Law, No Agreement to Arbitrate was Formed.**

In the state of Nebraska, arbitration is purely a matter of state contract law. *Hollins v. Debt Releif of Am.,* 479 F.Supp.2d at 1106.  Under Nebraska contract law, to "create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or binding mutual understanding between the parties to the contract." *Lindsay Ins. Agency v. Mead,* 244 Neb. 645, 652, 508 N.W.2d 820, 825 (1993); *Gerhold Concrete Co. v. St. Paul Fire & Marine Ins. Co*., 269 Neb. 692, 700, 695 N.W.2d 665, 672 (2005). "A fundamental and indispensable basis of any enforceable [contract] is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract." *Peters v. Halligan*, 182 Neb. 51, 55, 152 N.W.2d 103, 106 (1967); Accord *Hecker v. Ravenna Bank*, 237 Neb. 810, 815, 468 N.W.2d 88, 93 (1991).

Further, in order that a binding contract may result from an offer and acceptance, it is essential that the minds of the parties meet at every point, and that nothing be left open for future arrangement. *Zimmerman v. Martindale*, 221 Neb. 344, 347-48, 377 N.W.2d 94, 96-97 (1985) quoting *Ryban Investment Co. v. Wade*, 210 Neb. 707, 709-710, 316 N.W.2d 744, 746 (1982); Accord *Nebraska Nutrients, Inc. v. Shepard*, 261 Neb. 723, 751-52, 626 N.W.2d 472, 498-99 (2001). It is axiomatic that a written contract is not binding on the parties thereto unless it is signed or there is at least some manifestation of mutual assent to the terms of the unsigned writing. *State Farm Mutual Auto Ins. Co. v. Cheeper's Rent-A-Car*, 259 Neb. 1003, 1010, 614 N.W.2d 302, 308 (2000). See *Will-Drill Res., Inc. v. Sampson Res. Co.*, 352 F.3d 211, 215, 220 (5th Cir. 2003) (finding that party's allegation that not all necessary parties signed agreement goes to very existence of any contract and therefore must be resolved by a court before the court can order arbitration.)

Henggeler did not sign the document containing the arbitration clause at issue nor did she ever receive a copy. (Ex. 1¶10)   Not all of the necessary preconditions for an "agreement" to arbitrate are present. Thus, no "agreement" to arbitrate exists under these circumstances. Even if the court finds that an "agreement" exists under these facts, Henggeler is not bound by the unconscionable arbitration clause for a number of reasons.

### C. Midland's Arbitration Clause is Procedurally and Substantively Unconscionable.

### Unconscionability Generally.

As discussed above, under state contract law, a contract to arbitrate was not formed in this case. However, even assuming the court finds that a contract to arbitrate

was properly entered into under Nebraska contract law, that is not the end of the inquiry.

The court must next determine whether said clause is unconscionable. It is well settled

that courts may refuse to enforce agreements that are unconscionable. *Arkoosh v. Dean*

*Witter*, 415 F.Supp. 535, 538 (D.Neb. 1976); *Pollock v. Baxter Manor Nursing Home,*

706 F.2d. 236, 242 (8th Cir. 1983); *Muhammad v. County Bank of Rehoboth Beach,*

*Delaware*, 2006 WL 2273448 *6 (N.J. 2006). Nebraska courts evaluate both substantive

and procedural unconscionably. *Hollins*, 479 F.Supp.2d at 1106.

An unconscionable agreement is " '[a]n agreement that no promisor with any sense, and

not under a delusion would make , and that no honest and fair  promisee would accept.'"

*Id*. at 1106, <u>citing</u> *Black's Law Dictionary* 75 (8th ed. 2004) Nebraska law defines

"unconscionable" as manifestly unfair or unequitable. *Hollins*, 479 F.Supp.2d at 1106.

A contract is substantively unconscionable if the terms are grossly unfair under the

circumstances in existence at the time the parties entered the contract. *Id*. <u>citing</u> *EEOC v.*

*Woodman of the World Life Ins. Soc'y.*, 479 F.3d 561, 556 (8th Cir. 2007).

"Unconscionability is determined in light of all the surrounding circumstances, including

(1) the manner in which the parties entered into the contract, (2) whether the parties had a

reasonable opportunity to understand the terms of the contract, and (3) whether the

important terms were hidden in a maze of fineprint." *Hollins*, 479 F.Supp.2d at 1106

<u>quoting</u> *Parizek  v. Roncalli Catholic High Sch*., 11 Neb. App. 482, 655 N.W.2d 404, 408

(2002).  That is exactly the case here. (Filing No.46, Ex.1, MID 0001-00016) There is no

room anywhere to change the terms. (Ex.1¶11) Henggeler did not receive, (Ex.1¶10)

sign, (Ex.1¶10) or benefit from, (Ex.1¶4) and had no opportunity to change or negotiate

the terms. (Ex.1¶)

### D. Procedural Unconscionability .

Procedural unconsciionability of an arbitration clause in a contract focuses on the factors of surprise and oppression, with surprise being a function of the disappointed expectations of the weaker party. *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1171 (9th Cir. 2003). The surprise hits when the customer inevitably receives a nasty shock when he or she finds out that no relief is available even if out and out fraud was committed, or even if he or she merely wants to be compensated for their damaged property. *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003). The oppression hits when the inability to receive relief is artfully hidden by merely referencing the arbitration rules, and not attaching those rules to the contract for the customer to review. The customer is forced to go to another source to find out the full import of what he is about to sign prior to signing. *Id.* Again, Henggeler never signed anything indicating her assent to arbitrate, (Ex.1¶10) she did not receive anything from Chase on the issue, (Ex.1¶10) nor did she benefit from the alleged account. (Ex.1¶4)

### E. This Arbitration Clause is an Unconscionable Contract of Adhesion.

The Eighth Circuit defines "contracts of adhesion" as "a form of contract submitted by one party and accepted by another on the basis of *this* or *nothing*. It is an instrument devised by skilled legal talent for mass and standard industry-wide use, which does not allow for idiosyncrasy. It is a transaction not negotiated but one which literally *adheres* for want of choice." [Emphasis in Original]. *Haines v. St. Charles Speedway*, 874 F.2d 572, 573-75 (8th Cir. 1989). The Eighth Circuit in *Haines* stated that it is to examine the "total transaction" in determining the intent of the parties, rather than looking only to the literal language of the document. *Id*. In the *Haines* case, the court held

that the agreement, obviously crafted by lawyers, printed in small type, was a contract of adhesion. "Contracts of adhesion are subject to careful judicial scrutiny to avoid injury to the public. *Id.* "Contracts of adhesion" are ones "where the customer is required to 'adhere' to the standard contract form." *Id*.

A contract of adhesion exists where the party with superior bargaining power drafts a standardized form of agreement ands presents it to the other party on a "take it or leave it" basis. *Hollins*, 479 F.Supp.2d at 1106. In contracts of adhesion, the nondrafting party is held not to have voluntarily consented to be bound by all the contract's terms. *Pollock v. Baxter Manor Nursing Home*, 706 F.2d 236, 242 (8th Cir 1983). Courts traditionally have reviewed with heightened scrutiny the terms of contracts of adhesion, form contracts offered on a "take it or leave it" basis by a party with stronger bargaining power to party with weaker power. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 600 (1991):

> When a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all of the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld.

*Id*. at 600-601; see also *Milbank Insurance Co. v. Henry,* 232 Neb. 418, 425, 441 N.W.2d 143, 148 (1989).

The Eighth Circuit Court of Appeals has held that when presented with the standardized contract of adhesion, a court may deny giving effect to an unconscionable clause therein. *Surman v. Merrill Lynch, Pierce, Fenner, & Smith*, 733 F.2d 59, 61 (8th Cir.1984) "A finding of a contract of adhesion is essentially a finding of procedural

unconscionability." *Ting,* 319 F.3d at 1149 quoting *Flores v. Transamerica HomeFirst, Inc.,* 93 Cal.App.4[th] 846, 113 Cal. Rptr.2d 376, 382 (2001).

In a case in which this court was faced with a Motion to Compel Arbitration based on a similar preprinted agreement containing an arbitration clause, the court denied defendant's motion to compel arbitration and struck the arbitration provision in its entirety holding:

> If this court upheld the validity of a standard, boilerplate arbitration clause in an otherwise standard, pre-printed contract of adhesion, this court would, in effect, permit DRA to establish minimum contacts in the state of Nebraska, conduct business with financially impaired Nebraska residents, take their money, and then force these residents to resolve litigious matters in Dallas, Texas. Hollins is not a sophisticated business man with any kind of commercial background; the court is unwilling to conclude that at the time of entering into a contract with DRA, Hollins could negotiate the inclusion of the arbitration clause. The court further finds that the combination of Hollins' ignorance and inexperience with contract negotiation together with DRA's alleged "take it or leave it" overreaching demonstrates unconscionability.
> *Hollins,* 479 F.Supp.2d at 1107.

In this case, the arbitration clause requires the application of Delaware law. (Filing No. 46, Ex.1)  The Eighth Circuit has also refused to enforce choice of law provisions, which were not freely negotiated. In *Modern Computer Systems, Inc. v. Modern Banking,* 858 F.2d 1339 (8th Cir. 1988), the court observed that one party was not represented by counsel and no negotiation of the choice of law provision occurred. The Eighth Circuit found as follows: "Our court has not hesitated to negate contractual choices regarding the litigation of disputes when to enforce the parties' agreement would be unfair and unreasonable. (citation omitted) We find such is the case here, and we hold,

under *Restatement (Second) of Conflict of Laws §1872* that the enforcement of the

parties' choice of law provision would be contrary to fundamental public policy." *Id*. at

1345; *World Life Ins. Soc. v. Yelich*, 250 Neb. 345, 349, 549 N.W.2d. 172, 175 (1996);

*Haakinson & Beaty Co. v. Inland Ins. Co.,* 216 Neb. 426, 428-430, 344 N.W.2d 454, 457-

58 (1984).

Plaintiff indicated she has no connection with Delaware, (Ex.1¶12) did not have a

lawyer, (Ex.1¶15) was not able to negotiate that term, (Ex.1¶11) did not sign, (Ex.1¶10)

did not benefit from (Ex.1¶4) and did not receive a copy of the document proffered by

Christina Paperman, (Ex.1¶6, 10) which consists of (Filing No. 46, Ex.1, MID 008-

00016). Therefore, the Motion should be denied.

### F. A Limitation of the Plaintiff's Substantive Rights is Substantively Unconscionable.

The U.S. Supreme Court has stated repeatedly that arbitration must allow a party

to "effectively vindicate" its rights. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,

Inc.*, 473 U.S. 614, 637 (1985); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28

(1991) (quoting *Mitsubishi*). As the Sixth Circuit has noted, it is not permitted for

arbitration clauses to strip individuals of their statutory rights:

> [E]ven if arbitration is generally a suitable forum for
> resolving a particular statutory claim, the specific arbitral
> forum provided under an arbitration agreement must
> nevertheless allow for the effective vindication of that
> claim. Otherwise, arbitration of the claim conflicts with the
> statute's purpose of both providing individual relief and
> generally deterring unlawful conduct through enforcement
> of its provisions.
> *Floss v. Ryan's Family Steak Houses,* 211 F.3d 306, 313 (6th Cir. 2003)

(citation omitted).

The Sixth Circuit has repeatedly reaffirmed its holding in *Floss* that arbitration clauses may not be enforced where they would bar parties from effectively vindicating their statutory rights. See *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 658-59 (6th Cir. 2003); and *McMullen v. Meijer, Inc.*, 337 F.3d 697, 703 (6th Cir. 2003).

### G. Denying Plaintiff the Right to Pursue a Class Action is Substantively Unconscionable.

The class action mechanism is valuable to litigants, to courts and to the public interest. *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 2006 WL 2273448 *7 (N.J. 2006). The Supreme Court has noted that class actions "serve an important function in our system of civil justice." *Gulf Oil Company v. Bernard*, 452 U.S. 89, 99 (1981). The Court has also recognized that the class action procedure is necessary for private rights of action to be initiated. *Id*.; see also *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980). As the Court stated in *Roper*, class actions serve an important function in our system of civil justice because they permit plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Roper,* 445 U.S. at 338. This is particularly true in the context of a consumer class action.

"Rule 23 [Fed.R. Civ.P.] must be liberally interpreted" and read to "favor maintenance of class actions". *King v. Kansas City Southern Industries,* 519 F.2d 20, 25-26 (7th Cir. 1975); *Caroline C. v. Johnson*, 1996 U.S. Dist. LEXIS 21358, *13 n. 6 (D. Neb. Sept. 4,1996); *Buchholtz v. Swift & Co.,* 62 F.R.D. 581 (D.Minn. 1973). See also *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985). As the U.S. Supreme Court and many other courts have recognized, the class action offers individuals with small claims

their only realistic opportunity to receive justice. See e.g., *Amchem Products v. Windsor*, 521 U.S. 591 (1997); *Phillips Petroleum v. Shutts*, 742 U.S. 797 (1997); see also *Ting v. AT&T*, 182 F. Supp.2d 902 (N.D. Cal. 2002), aff'd in part, 319 F.3d 1126 (9th Cir. 2003). In *Evans v. Am. Credit Systems*, 222 F.R.D. 388 (D. Neb. 2004), this court found that the resolution of plaintiffs' claims through the mechanism of a class action rather than through hundreds of individual suits is the superior method to obtain remedies for the class members. *Id*. at 396.

In addition, the Supreme Court has also acknowledged that without the possibility of recovering an attorney fee, most of these class actions would never be filed because the damages award for each plaintiff is so small. No competent attorney would undertake this complex litigation to recover such small amounts. Economic reality dictates that the petitioner's suit proceed as a class action or not at all. *Knepp v. Credit Acceptance Corp*., 229 B.R. 821 842, (1999) citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). The *Knepp* court held that the Plaintiff "would be prejudiced in prosecuting the action as a class action if arbitration were enforced." *Knepp*, 229 B.R. at 842.

## VIII.  Even If the Arbitration Clause is Valid, the Claims Raised in the Plaintiff's Amended Complaint are outside the scope of and Not Encompassed in Midland's Arbitration Clause.

### A.  The Definition of "Claims Covered" in the Arbitration Clause Excludes the Claims Between the Parties in this Case.

Paragraph 2 of the arbitration clause reads (Filing No. 46, Ex.1) in part (in much small print than set forth here) as follows:

> 2. **Claims covered**. Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in

> which it is used) by either you or us against the other, or against the employees, agents, or assigns of the other **arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account, will, at the election of you or us, be resolved by binding arbitration. ……Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire prior Cardmember Agreement or any prior Cardmember Agreement.** (Emphasis Added)
> (Filing No. 46, Ex.1, MID0008)

The language of the arbitration clause specifically limits the scope of the claims to several enumerated types, none of which are at issue in our case.

Plaintiff's primary allegation is that Midland falsely used the name ENCORE FUNDING, LLC in connection with the collection of consumer debts in Nebraska. (Plaintiff's First Amended Complaint (Filing No. 12 at ¶55)). However, the arbitration clause limits its scope to the cardholder agreement the account and the advertising.  None of which are at issue in the case. On the issue of the relationship or lack thereof as between the debt and the practices of the debt collector, this court has found no relationship between the two.  In *Evans v. Am. Credit Syst.*, 2003 WL 23018529 (D.Neb. December 10, 2003), the court granted Plaintiff's motion to dismiss the counterclaim the debt collector attached to the Plaintiff's FDCPA case: "'Evidence of Plaintiff's failure to pay Defendants money owed to them has no relevance on the issue of whether the Defendants' actions in collecting the debt violated federal law.'" *Evans*, 2003 WL 23018529 at *1 quoting *Orloff v. Syndicated Office Syst., Inc*., 2003 WL 22100868 (E.D. Pa. August 20, 2003).

The *Evans C*ourt relied on *Peterson v United Accounts, Inc*., 638 F.2d 1124 (8th Cir. 1981), in which the Eighth Circuit stated that, "while a claim may, in a technical

sense, arise from the same loan transaction, the two claims bear no logical relation to one

another." *Evans* at *1 <u>quoting</u> *Peterson*, 638 F.2d at 1137. The *Evans* Court found that

*Peterson* was still relevant and controlling. *Evans*, 2003 WL 23018529 at *1.

      Other jurisdictions have addressed this in the arbitration area. In a case similar to

the present, *Fox v. Nationwide Credit*, 2010 WL 3420172 (N.D. Ill. August 25, 2010), the

court denied Defendant's motion to compel arbitration. In doing so the court in *Fox*

observed:

> Here, Plaintiff's claim is not based on the terms of her
> cardholder contract; Plaintiff alleges only that NCI violated
> the FDCPA by leaving messages without identifying itself
> and without indicating that the calls were being made in an
> effort to collect a debt. Indeed, Plaintiff's claims are not
> even the type that could be asserted in defense against a
> creditor suing on a breach of the cardholder agreement.
> *Fox*, 2010 WL 3420172 at *6.

Here Henggeler is challenging Midland's false name, "Encore Funding, LLC".  Because

the nature of the claims against Midland fall outside the scope arbitration clause

Midland's Motion to Arbitrate should be denied.


    **B.  Plaintiff Cannot be Required to Submit to Arbitration any Dispute, which**

**She has Not Agreed so to Submit.**

      Arbitration "is a matter of consent, not coercion." *Lucy v. Bay Area Credit Svc.,*

*LLC*, 792 F.Supp.2d 320, 323 (D.Conn. May 23, 2011) <u>quoting</u> *Volt Info. Scis*. *v. Bd. of*

*Trs. of Leland Stanford Junior Univ*., 489 U.S. 468 (1989).  Defendant Midland argues

that the FAA embodies a broad federal policy in favor of arbitration. (Filing No. 47, Brief

P. 2-3) However, "its provisions are not to be construed to so broadly as to include claims

that were never intended for arbitration." *Fox v. Nationwide Credit, Inc.*, <u>supra</u> at *2,

quoting *Duthie v. Matria Healthcare*, 540 F.3d 533, 536 (7th Cir. 2008) quoting  *Am. Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003).

Moreover, in *McGinnis v. Bonewicz*, 2012 WL 604430 (C.D. Ill. Feb 2, 2012), the court denied the Defendant's motion for arbitration. "This Court notes that arbitration is a matter of contract, and that a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id*. at *4 citing *Gore v. Alltel Comm., LLC*, 2012 WL 169758 *3 (7th Cir. Jan. 19, 2012). See also *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, (2002). ""Persons are generally entitled to have their dispute settled by the ruling of a court of law. It is essentially only by making a commitment to arbitrate that one gives up the right of access to a court of law in favor of arbitration."" *Lucy*, 792 F.Supp.2d at 323 quoting  *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2nd Cir. 2008)

The language of the arbitration clause itself specifically identifies the types of claims, which are within its scope. The claims identified have nothing to do with Plaintiff's claims against Midland.  Additionally, Midland has failed to show that the issue at hand was one in which Henggeler agreed to submit to arbitration. For these reasons, the Midland's Motion for Arbitration should be denied.

**IX. Additionally, Arbitration is not a Suitable Forum for an action seeking Injunctive Relief when it is being sought under a Deceptive Practices Statute and the Consumer is Acting as a Private Attorney General on behalf of the Public at Large**.

In California for example, the state legislature there did not intend injunctive relief under a private attorney general type consumer protection statute to be subject to arbitration. *Brughton v. CIGNA Healthplans,* 21 Cal. 4th 1066, 90 Cal. Rptr 334, 988 P.2d

67 (1999).   The FAA permits a state to create a cause of action for public injunctive relief that is not amenable to resolution through private arbitration. *Cruz v. PacifiCare Health Syst., Inc.*, 66 P.3d 1157 (Cal. 2003). Arbitration generally cannot enforce equitable or injunctive relief on a class wide basis, which Plaintiffs seek under the consumer protection statutes at issue here.

While the Nebraska Consumer Protection Act (NCPA) permits the recovery of attorney fees, restoration of the purchase price and the imposition of civil penalties, its principal thrust is to prevent unfair or deceptive acts or practices in trade or commerce. Consequently, the Act is equitable in nature, in the sense that it seeks to prevent prejudicial conduct rather than merely compensate for such damage as may flow therefrom. *Hage v. Gen. Serv. Bureau*, 306 F. Supp.2d 883, 890 (Neb. 2003) citing Neb. Rev. Stat.  §59-1602. Thus, any attempt to arbitrate this case would usurp the intent of this statue to the detriment of the consumer. When an arbitration clause has provisions that defeat the remedial purpose of a statute, it is not enforceable.  *Paladino v. Avnet Computer Techs, Inc*., 134 F.3d 1054, 1062 (11th Cir. 1998). Courts with UDAP statutes have also held that a party may not contract away liability for fraudulent or intentional acts or for negligent violations of statutory law. *Ting v. AT&T*, 182 F.Supp.2d 902 (N.D. Cal. 2002) aff'd with respect to unconscionability, 319 F.3d 1126 (2003) citing *Baker Pac. Corp. v. Suttles*, 220 Cal. App.3d 1148, 1154 (1990).

Plaintiff's claims are therefore simply outside the scope of the arbitration clause. Arbitration cannot adequately enforce state deceptive practice statutes and consumer protection statutes. Because these important state laws containing important consumer rights will be eviscerated in arbitration, this court can and should deny Midland's Motion.

### X.  Midland Waived its Right to Compel Arbitration in this Case.

"A party acts inconsistently with its right to arbitrate if the party 'substantially invokes the litigation machinery before asserting its arbitration right.' " *Hooper v. Advance Am. Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 921 (8th Cir. 2009), Even assuming _innuendo_ that the court determines the existence of a proper arbitration clause, Midland waived its right to enforce the clause by acting inconsistent therewith. This is true in both the county court collection cases Midland handles as well as its participation in this case.

It is Midland's routine practice to file collection lawsuits against Nebraska consumers using the phony name ENCORE FUNDING, LLC. In fact a search of JUSTICE revealed thousands of such collection lawsuits. (Ex.2A) When asked in the limited discovery in this case to name one collection case it arbitrated in Nebraska, Midland objected. (Ex.3 Response Int.#3) Henggeler challenged Midland to reveal the true number of cases it chose to litigate for anyone in the state of Nebraska during the last year. (Ex.3, Response Int.#5) Not only that, Midland filed a county court collect lawsuit against Henggeler for the very CHASE account for which its arbitration clause is at issue in the case. (Ex.1¶13, Ex.1A) *ENCORE v. Henggeler* was filed in the county court of Cass County Nebraska at Case No. CI 11-520, the purpose of which was to collect the alleged Chase account. (Ex.1¶13 & Ex.1A) The collection complaint never attaches the cardholder agreement or makes any mention of either party's right to arbitrate.  In fact, the county court case was ultimately dismissed for lack of evidence that Henggeler owed the alleged debt. (Ex.1, Ex.1B) Thus, Midland, through its actions, waived its right to arbitrate.

24

Also in this case, Midland waived its right to compel arbitration. Plaintiff's initial Complaint was filed herein on September 16, 2011, an Amended Complaint (Filing No. 12) was later filed and Midland filed an Answer alleging affirmative defenses on November 30, 2011. (Filing No. 34)  Midland waited over four months while the case proceeded and fees were incurred and other defendants filed a Motion to Dismiss involving the same issues (Filing No. 35 P.41-46) before it finally filed its motion to compel arbitration.  That delay waived its right to now compel arbitration. *Hooper v. Advance Am. Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 923 (8th Cir. 2009)

Plaintiff is prejudiced if the court compels arbitration. Prejudice results when parties litigate substantial issues on the merits or when compelling arbitration would require a duplication of efforts. *Id*.  The prejudice threshold is not onerous. *Id*.  In fact there remains a circuit split of authority as to whether the party asserting the waiver of right to arbitration must demonstrate prejudice at all.

> There remains a circuit split as to whether the party asserting waiver of a right to arbitrate must demonstrate prejudice at all.  Compare *Petrol. Pipe*, 575 F.3d at 480 (requiring prejudice); *United States v. Park Place Assocs., Ltd*., 563 F.3d 907, 921 (9th Cir. 2009)(same); *Crossville Med. Oncology, P.C. v. Glenwood Sys., L.L.C*., 310 Fed. Appx. 858, 859 (6th Cir. 2009)(same); *Forrester v. Penn Lyon Homes, Inc*., 553 F.3d 340, 343 (4th Cir. 2009)(same); *Zimmer v. Cooper Neff Advisors, Inc*., 523 F.3d 224, 231 (3d Cir. 2008)(same); *In re Tyco Int'l Ltd. Secs. Litig*., 422 F.3d 41, 46 (1st Cir. 2005)(requiring "a modicum of prejudice"); *Thyssen, Inc. v. Calypso Shipping Corp*., 310 F.3d 102, 105 (2d Cir. 2002)(requiring prejudice); *Ivax Corp. v. B. Braun of Am., Inc*., 286 F.3d 1309, 1315-16 (11th Cir. 2002)(same); and *Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 701 (10th Cir. 1989)(requiring "substantial prejudice"), with *Khan*, 521 F.3d at 425 (stating prejudice is not required), and *Cabinetree*, 50 F.3d at 390 (same). *Hooper*, 589 F.3d at 924.

As the *Hooper* court noted: "Experienced trial lawyers 'know how important it is to settle on a forum at the earliest possible opportunity' and [defendants] 'failure…to move promptly for arbitration is powerful evidence that [it] made [its] election against arbitration." *Id*. <u>citing</u> *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc*., 50 F3d 388, 391 (7th Cir. 1995).

Here it is prejudicial to sue Plaintiff in county court under a phony name, conceal the arbitration clause, then when she sues on issues unrelated to the arbitration clause Midland moves to invoke the alleged arbitration clause against her. Plaintiff is further prejudiced by being forced to Arbitrate the same issue (use of phony name by Midland) that was briefed extensively by Plaintiff in her opposition to the other parties' motion to dismiss (Filing No. 35, P.41-46) pending with the court. If a party seeking arbitration allows an opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate by substantially participating in litigation prior to moving to compel arbitration, the opposing party has suffered prejudice justifying a waiver of arbitration. *Mims v. Global Credit & Collection*, 2011 WL 3586056 (S.D.Fla. August 12, 2011). For that reason, Midland waived arbitration.

## XI.  Midland's Authority Does Not Support its Motion to Compel Arbitration.

Midland cites a number of Circuit cases in support of its motion to compel arbitration.  However, these cases only reveal a small portion of the analysis needed to rule on Midland's motion.  Defendant's argument avoids any discussion the role of state contract law in determining whether the disputed arbitration clause slipped into the document is unconscionable and therefore void and unenforceable.

Midland cites *Schreiner v. Credit Advisors, Inc.*, 2007 WL 2904098 (D.Neb. 2007) claiming that this court compelled arbitration of a case where the clauses are of the same general construction as the language at issue here.  However, Midland has missed the distinction between these cases.  In *Schreiner* the "arbitration clause" was more obvious and the consumer reviewed the clause, provided his initials next to the arbitration language suggesting his understanding, agreement, and acceptance of the term in Credit Advisors' form agreement.  *Id*. at *4.

Midland cites *CD Partners, LLC v. Grizzle*, 424 F.3d 795 (8th Cir. 2005), claiming that the Eighth Circuit held, "any claim, controversy or dispute arising out of or relating to Franchisee's operation of the Franchised business under the Agreement." *Id*. at 800. Midland goes on to say that the Eighth Circuit acknowledged the "strong national policy in favor of arbitration" arguing that because issues arose from the same "operative facts" at issue in the agreement. (Filing No. 47, Brief P.8)  However, upon careful reading of the case it is inapposite in this matter for a number of reasons, including:

1.  The agreement in *Grizzle* is between savvy business people in a commercial setting and not an unsophisticated consumer and a business enterprise founded to exploit financially beleaguered citizens;

2.   The issue of an unconscionable arbitration clause is not discussed in the case;

3. The harm at issue is so far from the gist of the cardholder agreement in that the claim against Midland is for using a deceptive and fictitious name in collecting debts in Nebraska.

In addition Midland's statement about a strong policy favoring arbitration only glosses over the top of the real issue of whether the adhesive arbitration clause slipped

into the credit card fine print has anything at all to do with the fact that Midland is using a confusing, false, and fictitious name when it is collecting alleged debts from residents of Nebraska.  It boggles the mind to think that Midland is attempting to compel arbitration when its violations of the FDCPA for deceptive activities are so distant from any part of the expected or normal activities surrounding the use of a credit card.  There is simply no possible way for Midland to argue that "operative facts" of Plaintiff Henggeler's case are subject to the terms of the arbitration clause Midland contends to be part of the cardholder agreement.

Midland cites *Lyster v. Ryan's Steakhouse*, 239 F.3d 943, 945 (8th Cir. 2001) to support its statement that the court should adopt a liberal standard in favor of compelling arbitration.  However, other statements of policy and law support the plaintiff's resistance to arbitration. The Eighth Circuit says flatly that the excessive cost of arbitration is a circumstance in which an arbitration clause is unconscionable. *Id.* at 947.  The circuit court declares that the parties must have executed a valid arbitration agreement in order for the district court to compel arbitration. *Id.* see also *Rhode v. E & T Invs. Inc*., 6 F.Supp. 2d 1322, 1328 (M.D. Ala. 1998)(When a party in an inferior bargaining position is compelled to assert his claims in arbitration thus precluding a remedy in the less expensive public forum and the costs of the arbitral forum render the party unable to pursue his claim, the clause is oppressive and one-sided and therefore unconscionable).

Midland cites *Pro Tech Indus., Inc. v. URS Corp*., 377 F.3d 868 (8th Cir. 2004) for authority that when the parties have agreed to arbitrate and the issue falls within the scope of the agreement, the court has no choice but to compel arbitration. Unlike Pro Tech, the issue is clearly not part of any arbitration agreement.  Midland bootstraps its

28

way throughout its argument and never provides any analysis on whether Plaintiff Henggeler's case satisfies both criteria. One possible explanation for this approach is that a hard look at the facts and good analysis of this situation must result in the conclusion that there is no agreement to arbitrate and that the nature of the dispute is so far outside any rational understanding of the alleged agreement that it is impossible to argue that arbitration is the answer here.

## XII. Midland's Claims that Other Courts have Routinely Referred Other Such Cases to Arbitration is Wrong.

Midland provides orders from other district courts while attempting to equate those cases to the situation before the court here. Midland's Index (Filing No. 46, Ex. 5, 6, & 7) includes three recent district court decisions in which arbitration has been ordered. However, this case is readily distinguishable from each of those cases. The very fact that there are three recent decisions involving Midland must cause one to pause and wonder what Midland is doing to provoke so many class actions for FDCPA violations. This clearly shows pattern and practice of taking advantage of consumers and then using a mere technicality to make itself immune from judicial scrutiny.

In the first such example, (Exhibit 5 to Filing No. 46) *Thompson v. Midland Funding* from all appearances Plaintiff's counsel simply rolled and allowed Midland to run over Thompson's case. However, the facts of this case are far different. The major violation committed by Midland here is the use of a false name. As seen elsewhere herein, the scope of any agreement to arbitrate is limited to issues surrounding the debt, the underlying account, or the cardholder agreement. None of which are at issue here. It is impossible for Midland to argue that Plaintiff Henggeler would have or could have

agreed to arbitrate such a remote occurrence as Midland using a false name to file a lawsuit on an account she never used, (Ex.1 ¶4, 18) never benefited from, (Ex.1 ¶4) and never received any notice or mailing that there was some agreement to arbitrate disputes. (Ex.1 ¶10, 14)  Clearly, the actions of Midland in this case are far outside the scope of any agreement to arbitrate.  At most *Thompson* defines the limits of what issues can be arbitrated and that definition does not include the violations alleged in this case.

Next, Midland offers *Bellows v. Midland Funding LLC* (Exhibit 6 to Filing No. 46) in support of its motion to arbitrate.  However, once again, there are important distinctions between this case and *Bellows*.  In *Bellows* the court found that there was no real dispute that there was an agreement to arbitrate and that the dispute was within the scope of the agreement.  That is hardly the case here.  For all of the reasons noted in the Affidavit of Plaintiff Henggeler (Ex.1) there is a major dispute that there was ever any agreement to arbitrate any dispute because she in no way bound herself to any agreement as assumed by Midland.  Further, as discussed above, the use of the false and fictitious name in attempting to collect on the alleged account is simply not within the scope of the alleged agreement.  For all these reasons *Bellows* is of no value to Midland.

The last case attached as Exhibit 7 to Midland's Index (Filing No.46, Ex.7) is *Olnick v. Fulton, Friedman & Gullace, LLP*, a case out of the Western District of Texas. Midland again argues that *Olnick* is proof positive that arbitration must be ordered. However, once again a careful analysis of the reasoning in *Olnick* establishes that this case is much different and that arbitration is not appropriate.  The most important difference comes in the discussion of state law in both Georgia and Texas. (Filing No. 46, Ex.7, P.6)  Under that law "a party may be bound by an agreement to arbitrate even

though the party did not sign it, when "assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other."" Plaintiff Henggeler did not sign the credit card, (Ex.1¶4) she did not sign for or make any purchases with the card, (Ex.1¶8) she never received any notice of the terms and conditions allowing for arbitration, (Ex.1¶10) nor did she accept any benefits (Ex.1¶10) under the "contract" as relied on by the court in its analysis in *Olnick*. Without these factors being present and uncontroverted Midland's reliance on *Olnick* is eviscerated and arbitration in this case is unwarranted.

### XIII. Conclusion.

For the above reasons, Plaintiff requests that the court kindly overrule Defendant's Motion to Stay the Proceedings and Compel Arbitration or Dismiss.

Respectfully Submitted:
Sharon Henggeler & David
Randall, Plaintiffs,

By: */s/William L. Reinbrecht*
William L. Reinbrecht, #20138
Pamela A. Car, #18770
Car & Reinbrecht, P.C., LLO
8720 Frederick Street, #105
Omaha, NE 68124
402 391-8484
402 391-1103 (Fax)

And

O. Randolph Bragg
Horwitz, Horwitz & Assoc.
25 East Washington St., #900
Chicago, IL 60602
312 372-8822
312 372-1673 (Fax)
Attorneys for Plaintiffs
And the Putative Class

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2012, I electronically filed the foregoing with the Clerk of Court, using the CM/ECF system, which will send notification of such filing to the following:

Douglas E. Quinn
J. Scott Paul
McGrath North Mullin & Kratz, P.C., LLO
1601 Dodge Street
First National Tower, Suite 3700
Omaha, NE 68102

Cory J. Rooney
Brumbaugh & Quandahl, P.C., LLO
4885 South 118th Street, Suite 100
Omaha, NE 68137

Joseph E. Jones
Luke J. Klinker
Elizabeth A. Culhane
Fraser, Stryker, P.C., LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102

And I certify that I have mailed by regular United States Postal Service the document to the following non CM/ECF participants: NONE

By: */s/William L. Reinbrecht*
William L. Reinbrecht, #20138
Car & Reinbrecht, P.C., LLO
8720 Frederick Street, #105
Omaha, NE 68124
402 391-8484